IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JOSE REFUGIO DAVALOS, )
)
    Plaintiff, )
)
) No. CIV-16-246-R
v. )
)
JEFFREY TROUTT, M.D., )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se*, originally filed this action in the District Court of Oklahoma County. It was removed to this Court by Defendant. Following removal, District Judge Russell referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

In this action, Plaintiff seeks damages from Defendant Troutt for alleged constitutional deprivations pursuant to 42 U.S.C. § 1983 and for alleged "medical negligence" in violation of Oklahoma Constitution art. II, § 9. Defendant Troutt has moved to dismiss the cause of action or, alternatively, for summary judgment. Defendant Troutt has also caused the filing of a Special Report consistent with Martinez v. Aaron, 570 F.2d 317 (10th cir. 1978). Plaintiff has responded to the motion, and Defendant has replied to the response. Thus, Defendant's motion is at issue.

1

I. Complaint

In his Complaint entitled "Petition for Medical Negligence," Plaintiff states that he is an Oklahoma inmate confined at the James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma. Plaintiff alleges that Defendant Troutt is a physician providing medical care for inmates at JCCC as an employee of the Oklahoma Department of Corrections ("ODOC"). Plaintiff alleges that he was "diagnosed with scabies of [his] legs, hands and back" in June 2014 and that a medication, Tolnaftate cream, was ordered as treatment for this skin condition by Dr. Thompson, a physician in the medical clinic at JCCC.

Plaintiff contends that "for more than a year" he made numerous requests to Defendant Troutt for medical treatment for the skin condition and that Defendant Troutt failed to provide adequate medical treatment for the skin condition in violation of Plaintiff's rights under the Oklahoma Constitution and the Eighth Amendment of the United States Constitution. Complaint (Doc. # 1, att. 1), at 1. Plaintiff seeks damages from Defendant Troutt for pain, "emotional suffering," itching, bleeding, sleep disturbance, and "scorn from fellow prisoners and staff" he experienced "because of the continued scabies infection" due to Defendant's inadequate medical treatment. Id. at 2.

II. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under this standard,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Factual allegations, as opposed to conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

A *pro se* plaintiff's complaint must be broadly construed under this standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). See Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. Hall, 935 F.2d at 1112.

Defendant has moved alternatively for either dismissal under Fed. R. Civ. P. 12(b)(6) or for summary judgment under Fed. R. Civ. P. 56(a). Defendant's argument in support of the motion relies, at least in part, and the undersigned has considered, matters outside of the pleadings, including documentary evidence in the Special Report. Additionally, Plaintiff was advised of his responsibilities in responding to Defendant's motion under Rules 12 and 56. The undersigned will therefore review Plaintiff's claims under the governing summary judgment standard, unless otherwise indicated. See Jones v. Cannon, 589 Fed. App'x 849,

3

854 (10th Cir. 2014)(unpublished op.)(recognizing "courts may treat Rule 12(b)(6) motions as motions for summary judgment if they raise matters outside the pleadings").

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court views the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmoving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). Rather, the moving party initially must only show "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation[s]" in his or her pleading to satisfy this requirement. Anderson, 477 U.S. at 256. Under Rule 56, the nonmoving party must respond by going "beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. "Where the record

4

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

Defendant seeks summary judgment on the ground that he is entitled to qualified immunity concerning Plaintiff's Eighth Amendment claim. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, __ U.S. __, 132 S.Ct. 2088, 2093 (2012)(citing Ashcroft v. al-Kidd, 563 U.S. 731. 735 (2011)). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). The district and appellate courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

III. Undisputed Facts

1. Plaintiff is an inmate confined at JCCC.

2. Defendant Troutt is a medical doctor employed by ODOC to provide medical treatment to inmates at JCCC.

3. On June 2, 2014, Plaintiff was treated in the JCCC medical clinic by RN Chester for a skin irritation/rash "behind knees bilaterally to calf area" with "extreme redness and itching." The medication methylprednisolone was prescribed for this condition by Dr. Troutt. RN Chester

5

also provided Plaintiff tubes of ointment medications and advised him to use cool compresses on the affected area.

4. On August 28, 2014, Plaintiff was treated in the JCCC medical clinic by RN Rollins for a continued rash behind both knees that was scaley, itchy, and burning. He stated that he was using a topical cream. Nurse Rollins noted that she dictated orders for treatment of Plaintiff's rash with diphenhydramine and tolnaftate topical ointments, each to be used for seven days.

5. On September 4, 2014, Plaintiff was treated in the JCCC medical clinic for a complaint of skin rash for seven months that was worsening and itching badly. Physician's assistant ("PA") Johnson noted a diagnostic assessment of inverse psoriasis versus atopic dermatitis. PA Johnson noted that he conducted a "punch biopsy" of Plaintiff's skin and that he had ordered triamcinolone acetonide topical ointment, to be used twice daily for 90 days, as treatment.

6. On September 11, 2014, Plaintiff was treated in the JCCC medical clinic by Dr. Meyer who noted that the biopsy of Plaintiff's skin showed the presence of an "allergic reaction and possible scabies." Special Report (Doc. # 10), Ex. 5, at 22. Dr. Meyer ordered elimite, or permethrin, cream to be used for two weeks as treatment for the skin condition.

7. Plaintiff did not show up in the clinic for treatment on October 27, 2014.

8. On November 14, 2014, Plaintiff was treated in the JCCC medical clinic by Dr. Troutt. Dr. Troutt noted a diagnosis of chronic obstructive lung disease. Dr. Troutt also noted that Plaintiff's medications included triamcinolone acetonide topical ointment and an inhaler.

9. On December 29, 2014, Plaintiff was treated in the JCCC medical clinic by Dr. Troutt. Plaintiff complained of a skin rash continuing for one year. Dr. Troutt noted a diagnosis of dermatitis. He also noted that Plaintiff stated "one cream helped but [he] does not have or know the name of the cream." Dr. Troutt noted he advised Plaintiff to bring that medication to the medical unit for a prescription.

10. On January 6, 2015, Dr. Troutt ordered triamcinolone acetonide topical ointment for Plaintiff to be used twice daily for 30 days and elimite (permethrin topical) cream to be used for two weeks.

11. On January 24, 2015, Plaintiff was treated in the JCCC medical clinic by LPN Bromlow. Plaintiff requested renewal of the triamcinolone cream. Dr. Troutt renewed the previous order of triamcinolone cream to be used two times daily for 30 days for "persistent rash." Special Report (Doc. # 10), Ex. 5, at 33-34.

12. On March 5, 2015, Plaintiff was treated in the JCCC medical clinic for muscle strain.

13. On March, 27, 2015, Plaintiff was treated in the JCCC medical clinic by Dr. Troutt, where he complained of a rash on his lower extremities for one year. Dr. Troutt noted that Plaintiff "states triamcinolone cream improves the symptoms." Dr. Troutt noted a diagnosis of steroid-responding dermatitis, for which he ordered triamcinolone acetonide topical ointment to be used two times daily for 60 days. Dr. Trout also renewed the previous order of an inhaler.

14. On May 7, 2015, Dr. Troutt renewed the order for triamcinolone cream for Plaintiff for 30 days.

15. On May 14, 2015, Plaintiff was treated in the JCCC medical clinic by Dr. Troutt, where he complained his skin rash was "starting to return." Special Report (Doc. # 10), Ex. 5, at 45. Dr. Troutt noted that Plaintiff exhibited "resolving skin changes with minimal findings." Id. at 47. The triamcinolone cream was continued, and Plaintiff was advised to return to the clinic in 2 weeks for "recheck." Id.

16. On June 1, 2015, Plaintiff was treated in the JCCC medical clinic by Dr. Troutt. Plaintiff stated he was not using his inhaler and had no respiratory problems. The inhaler medication was discontinued.

17. On June 25, 2015, Plaintiff was treated in the JCCC medical clinic by Dr. Troutt. Plaintiff complained of a rash on his lower extremities and "scabies in the past." Special Report (Doc. # 10), Ex. 5, at 60. Dr. Troutt noted that an examination revealed "lower extremities with 3-4 superficial ulcerations anterior with pruritis." Id. Dr. Troutt ordered treatment of permethrin lotion to be used for two weeks to "retreat for scabies." Id.

IV. Official Capacity Claim Against Defendant

Plaintiff's Complaint does not specify whether he is seeking damages from Defendant Troutt in his individual or official capacities. Defendant moves to dismiss Plaintiff's cause of action against him with respect to any implicit official-capacity claims. In response to Defendant's motion, Plaintiff clarifies that he is seeking damages from Defendant Troutt solely in his individual capacity. See Objection to Defendant's Motion to Dismiss/Motion for Summary Judgment (Doc. # 13), at 1. Therefore, Defendant's Motion seeking dismissal of Plaintiff's claims against him in his official capacity should be denied as moot.

V. Failure to Exhaust Administrative Remedies

Defendant moves to dismiss Plaintiff's cause of action against him on the basis that Plaintiff failed to exhaust available administrative remedies prior to filing this 42 U.S.C. §1983 action, as required by 28 U.S.C. § 1997e(a). In response to Defendant's motion, Plaintiff argues that he did indeed exhaust available administrative remedies concerning his § 1983 claim against Defendant Troutt. In his reply, Defendant Troutt states that he is withdrawing his motion to dismiss Plaintiff's cause of action on nonexhaustion grounds. Therefore, Defendant's Motion seeking dismissal of Plaintiff's claims against him under 42 U.S.C. § 1983 on the basis of failure to exhaust available administrative remedies should be denied as moot.

VI. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that Defendant Trout violated his Eighth Amendment rights by failing to provide adequate medical care for a skin condition during a year-long period after he was diagnosed with "scabies" in June 2014. To prevail on an Eighth Amendment claim under 42 U.S.C. § 1983, it is clearly established law that "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see Farmer v. Brennan, 511 U.S. 825 (1994).

Under Farmer, a plaintiff claiming that a medical professional was deliberately indifferent to his or her medical needs must prove two elements. The prisoner must show that, objectively, the inmate's medical needs were "sufficiently serious," and, subjectively, that the prison official acted with a "sufficiently culpable state of mind," which requires

9

proof the official knew of and disregarded an excessive risk to inmate health or safety. Self v. Crum, 439 F.3d 1227, 1230-1231 (10th Cir. 2006)(quoting Farmer, 511 U.S. at 837). See also Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).

A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(internal quotation omitted). The Court should assume that Plaintiff has satisfied the first factor of the Farmer test.

The uncontroverted evidence does not demonstrate specific facts showing that there is a genuine issue for trial as to the subjective component. Plaintiff's medical records show that he frequently used the medical services at JCCC during the time period between June 2014 and June 2015. During this time period, JCCC medical staff conducted a biopsy of Plaintiff's skin that was interpreted by Dr. Meyer as showing the presence of an allergic reaction and possible scabies. Defendant Troutt evaluated Plaintiff on several occasions and frequently ordered treatment for Plaintiff's skin rash. On one visit, Plaintiff reported that one of those prescribed ointments helped his skin rash. Defendant Troutt did not intentionally refuse to treat Plaintiff or ignore his medical complaints. Each time Defendant Troutt saw Plaintiff, he provided treatment. Nothing in the record reasonably suggests that Defendant Troutt acted with deliberate indifference in repeatedly treating Plaintiff for his skin condition.

Considering the pleadings and undisputed facts as shown by the uncontroverted medical record included in the Special Report, Plaintiff has not shown a disputed material

issue of fact for trial, and there is no evidence that Defendant Troutt violated clearly-established law.  Therefore, Defendant Troutt is entitled to summary judgment on the basis of qualified immunity concerning Plaintiff's Eighth Amendment claim.

Because Defendant Troutt is entitled to summary judgment on Plaintiff's federal claim, and because Plaintiff has not alleged or demonstrated diversity jurisdiction, the Court should decline to exercise supplemental jurisdiction over any state-law tort and constitutional claims asserted by Plaintiff. See 28 U.S.C. §§ 1331, 1332, 1367(c)(3); Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)(recognizing "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims").

RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant's Motion to Dismiss/Motion for Summary Judgment (Doc. # 11) be GRANTED in that (1) Defendant's Motion to Dismiss seeking dismissal of Plaintiff's claims against him under 42 U.S.C. § 1983 in his official capacity be denied as moot; (2) Defendant's Motion to Dismiss seeking dismissal of Plaintiff's claims against him under 42 U.S.C. § 1983 on the basis of failure to exhaust available administrative remedies be denied as moot; and (3) Defendant's Motion for Summary Judgment on the basis of qualified immunity as to Plaintiff's Eighth Amendment claim be granted and judgment issue in favor of Defendant and against the Plaintiff.  It is further recommended that the Court decline to exercise supplemental

jurisdiction over Plaintiff's state-law tort and constitutional claims.

The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by      August 1st     , 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   12th   day of   July   , 2016.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE